UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| **MATTHEW MEEDS,**<br>**individually and as**<br>**representative of those persons**<br>**similarly situated,**<br>**5651 Fairway Road**<br>**Fairway, Kansas 66205,** | ) ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.** 08-CV-2372 JWL/DJW |
| **v.** | ) ) | |
| **TIME WARNER, INC.,** | ) ) | **JURY TRIAL DEMANDED** |
| **Serve:**<br>**Time Warner, Inc.**<br>**One Time Warner Center**<br>**New York, New York, 10019-8016** | ) ) ) ) ) | |
| **and** | ) ) | |
| **TIME WARNER CABLE, INC.,** | ) ) | |
| **Serve:**<br>**Time Warner Cable, Inc.**<br>**One Time Warner Center**<br>**North Tower**<br>**New York, New York 10019** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Mathew Meeds, individually and as representative of the putative class described below, brings this Class Action Complaint against Time Warner, Inc. and Time Warner Cable, Inc. (collectively referred to as "Time Warner"). In support of this action, Plaintiff states and alleges as follows:

**INTRODUCTION**

1.      This is a class action brought on behalf of all persons who purchase premium cable services from Time Warner in the State of Kansas.  Time Warner's premium cable customers have no choice but to pay a rental fee for a "cable box" in order to view cable – for which they pay a separate fee.  Time Warner's action constitutes an unlawful tying arrangement resulting in an impermissible restraint of trade in violation of both state and federal law.

2.      The activities of Time Warner have and will continue to threaten to have substantial adverse competitive effects upon both interstate commerce and upon commerce within the State of Kansas.

**THE PARTIES**

3.      Plaintiff is a citizen of the State of Kansas, residing in Fairway, Kansas.

4.      Since approximately 1997, Plaintiff has been a subscriber of premium cable television services provided by Time Warner.

5.      Plaintiff brings this class action on behalf of himself and the following class of persons:

> All persons in the State of Kansas who subscribed to Time Warner for premium cable television services and paid a monthly rental fee for an accompanying cable box. Excluded from the class are Time Warner; officers, directors or employees of Time Warner; any entity in which Time Warner has a controlling interest; the affiliates, legal representatives, attorneys, heirs, or assigns of Time Warner; and any federal, state or local governmental entity, and any judge, justice, or judicial officer presiding

2

over this matter and the members of their immediate families and judicial staffs.

6.      Defendant Time Warner, Inc. is a Delaware corporation with its principal place of business located in New York, New York.   Prior to Time Warner Cable becoming a publicly held company, Time Warner, Inc. provided the cable services to Plaintiff and the class discussed in further detail below.  Time Warner, Inc. indirectly owns more than eighty percent of Time Warner Cable.

7.      Defendant Time Warner Cable, Inc. is a Delaware corporation that conducts business in the State of Kansas.  Time Warner Cable became a publicly held company in 2007.

8.      The illegal and tortious actions discussed below were committed by Time Warner, Inc. and then, subsequent to its becoming a wholly independent public company, Time Warner Cable.  Both entities are jointly and severally liable for the claims set forth herein.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action involves claims arising under federal law. Specifically, Plaintiff, on behalf of himself and putative class members, is asserting claims under the Sherman Anti-Trust Act found at 15 U.S.C. §§ 1 and 2.  This Court has supplemental jurisdiction under the additional common law and state law based claims pursuant to 28 U.S.C. § 1367.

3

10.     Venue is proper in this Court under 28 U.S.C. § 1391 because a significant portion of the events, acts, and omissions giving rise to this action occurred in the State of Kansas.

## CLASS ACTION ALLEGATIONS

11.     Time Warner has a monopoly in areas in which it provides cable television services to persons located in the State of Kansas.  Plaintiff – and all other Time Warner cable television subscribers in the State of Kansas – have no choice but to contract with Time Warner for cable television services.

12.     Plaintiff therefore brings this class action lawsuit on behalf of itself and similarly situated persons described above (the "class").  Specifically, Plaintiff brings this lawsuit pursuant to Federal Rules of Civil Procedure 23(b)(1), (2) and (3).

13.     The requirements of Rule 23, including numerosity, typicality, adequacy, predominance and/or superiority are satisfied.

14.     Members of the class are so numerous that joinder of all members is impracticable.

15.     There are questions of law and fact common to the class which predominate over questions affecting only individual members.  These questions include, but are not limited to, the following:

> a.     Whether Time Warner is liable to Plaintiff and the class for violations of federal anti-trust laws;
>
> b.     Whether Time Warner has established illegal tying arrangements for the rental of cable boxes in violation of federal and state law;

4

      c.      Whether Time Warner's actions caused injury to Plaintiff and the class and whether Time Warner should be enjoined from further violations;

      d.      Whether Time Warner is liable to Plaintiff and the class for treble damages for its violation of federal anti-trust laws; and

      e.      Whether Time Warner has violated the Kansas Consumer Protection Act.

16.      The claims of Plaintiff are typical to the claims of the class.

17.      Plaintiff will fairly and adequately represent the interests of the class. He has already retained class counsel who are experienced and qualified in prosecuting class actions and other forms of complex litigation.

18.      A class action under Rule 23 is superior to other available methods for the fair and efficient adjudication of this controversy because:

      a.      Plaintiff has the same interest as other members of the class, and is financially able to, and will, vigorously prosecute this action on behalf of the class;

      b.      It is desirable to concentrate the litigation involving claims of Kansas residents in this one forum because the expense and burden of the individual litigation make it impracticable for individual class members to pursue separate litigation; and

      c.      No difficulties are likely to be encountered in the management of this litigation as a class action.

5

## FACTUAL ALLEGATIONS

19.     Time Warner, Inc. is a leading media and entertainment company whose major businesses encompass an array of the most respected and successful media brands, including CNN, HBO, AOL, *Sports Illustrated*, and Time Warner Cable.

20.     On February 13, 2007, Time Warner Cable, Inc. became a publicly held company, registered with the Securities and Exchange Commission.

21.     Time Warner, Inc., and now Time Warner Cable, Inc. (collectively "Time Warner"), have long sold television cable services to persons within the State of Kansas. It is currently one of the nation's leading cable companies with clusters of millions of cable subscribers across the country.  One such cluster is the Kansas City, Missouri metropolitan area which includes persons, like Plaintiff, residing in the State of Kansas. According to its website, Time Warner provides services to more than 26 million homes in the United States.  In addition to Kansas, Time Warner provides cable services to customers in thirty-two (32) other states.

22.     As of December 31, 2006, Time Warner had approximately 13.4 million cable subscribers in clusters located mostly in the following five geographical locations: New York State, the Carolinas (North and South Carolina), Ohio, Southern California, and Texas.  According to Time Warner, Inc.'s 8-K Report filed with the SEC on January 31, 2007, the 13.4 million subscribers includes 788,000 customers in the "Kansas City, south and west Texas, and New Mexico cable systems ("the Kansas City pools")."

23.     Time Warner's cable operations resulted in revenues of $11.8 billion in 2006, a 34% increase from the previous year.

24.     According to an April 30, 2008 press release, revenues for just the first three month of 2008 grew 8% ($309 million) over the first quarter of 2007.

25.     Customers that subscribe to Time Warner's cable services, i.e. the class, pay a monthly fee for cable.

26.     Some customers, including members of the class, elect to receive premium channels.  Examples of premium channels would include HBO, Showtime, and other speciality channels.

27.     In addition to paying a fee for cable, customers that receive premium channels, i.e. the class, must also pay a rental fee to Time Warner for a cable box.  The cable box consists of a converter box and cable descrambler.  On information and belief, it is required in order for the class to view the premium channels.  In other words, premium channels can only be viewed by Time Warner customers if the customers also have a cable box.

28.     Time Warner requires class members to rent a cable box directly from it and no other source.  class members cannot purchase a cable box.  Put another way, Time Warner ties its premium channel cable service with the cable box it rents.  Importantly, the premium channel cable service and the cable box are separate and distinct products.

29.     Cable boxes are manufactured by numerous entities.  If not for the tying of products, the Plaintiff and the class could purchase a cable box from a manufacturer of their choice and use it to view the premium cable channels provided (for a cost) by Time Warner.

30.     That is not possible, however, because Time Warner requires Plaintiff and the class to rent a cable box from Time Warner.  By doing this, Time Warner forces the

7

class to pay a much larger amount of money than would be the case if they were allowed to purchase a cable box of their choice from a manufacturer of their choosing.

31.    In a matter of months, the rental fees the class is forced to pay for their cable boxes supplied by Time Warner greatly exceed their worth.

32.    Time Warner is simply purchasing cable boxes at a fixed and relatively low cost from certain manufacturers, only to turn around and rent the very same box to the class, with full knowledge that the class has no choice but to pay the rental fee charged by Time Warner.

33.    The improprieties of tying cable service to rental of a cable box has been thoroughly investigated by the Federal Communications Commission ("FCC"). The FCC has long recognized the lack of competition in the cable industry, resulting from monopolistic actions of cable companies.    In that connection, following extensive regulatory proceedings, the FCC has adopted a regulation requiring the cable industry to separate the descrambling and other security capabilities of a cable box and place the capabilities in a separate device, which is called a CableCARD.

34.    A CableCARD is a credit card-size device which performs the same "security" and "descrambling" functions provided by cable boxes. Time Warner, and all other cable operations, are required by FCC rules to make CableCARD devices available to consumers.

35.    Despite the FCC rules and related pronouncements, Time Warner still promotes the cable box as superior to the just recently available CableCARD.    For instance, diagrams of cable "hookup" found at Time Warner's website focus on the existence of a cable box; with no mention of possible use of the CableCARD. Elsewhere

on the website, Time Warner tells its customers "**there are limitations to a CableCARD connection.**" Time Warner goes on to push its cable box over the CableCARD technology: "Customers who want the easy-to-use on-screen guide and interactive features of digital cable service will want to connect via a Time Warner Cable digital set-top box." Time Warner also states the ability to view basic and digital cable channels, as well as premium cable channels, "varies" with use of a CableCARD but not with its cable box. Time Warner states: "Digital Cable and Digital Receiver are required to access Premium Services. **To receive all services, Digital Cable, remote and lease of a Digital set-top box are required.**" (emphasis added).

36.    In addition to all of this, even if customers do decide to use the CableCARD device, they must lease that device from Time Warner as well.

37.    Time Warner's actions allow Time Warner to unfairly utilize its monopoly in its Kansas markets and thereby exploit Kansas consumers.

## COUNT I

### (Violation of the Sherman Anti-Trust Act – Unlawful Tying)

38.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

39.    Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1, makes it unlawful to enter into a contract in restraint of trade or commerce. Congress has granted a private right of action to those injured in violation of this provision.

40.    Plaintiff, on behalf of himself and the class, seeks redress for Time Warner's violation of Section 1 of the Sherman Anti-Trust Act.

41.     Time Warner improperly ties and bundles its premium cable service with the necessary rental of a cable box. Specifically and as explained above, Time Warner contracted with the class to provide cable services but only on the condition that the class also rent a cable box from Time Warner.

42.     As a result, the class cannot unbundle the tied products, i.e. the cable service and cable box.

43.     Instead, the class is forced to pay fees for the cable box in addition to fees for cable service. Time Warner's coercive actions is particularly acute and egregious, given it is one of the largest cable service providers in Kansas and the entire United States.

44.     Time Warner's improper tying and bundling harms competition. Since the class can only rent the cable box directly from Time Warner, manufacturers of cable boxes are foreclosed from renting and/or selling cable boxes directly to members of the class at a lower cost.

45.     There is a market for cable boxes that is separate and apart from the market for Time Warner cable services. The two items (cable service and the cable box) are distinct and separate items.

46.     Time Warner has sufficient economic power in the improperly bundled and tied products allowing it to force the class to rent a product (i.e. the cable box) it would not otherwise rent from Time Warner. This economic power will continue absent the relief sought herein.

47.     Time Warner's tying and bundling of its cable service and cable boxes constitutes an unreasonable restraint of trade that is unlawful *per se*, under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

48.     Time Warner's tying and bundling activities have an adverse impact upon cable consumers and competition.

49.     There is no lawful business justification for Time Warner's actions.

50.     Plaintiff, on behalf of himself and the class, requests and prays for the following relief:

        a.     An Order certifying the proposed class pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiff's counsel as lead counsel for the class;

        b.     An Order that Time Warner has violated Section 1 of the Sherman Anti-Trust Act;

        c.     An Order under 15 U.S.C. § 26 enjoining Time Warner from illegally tying and bundling its cable service with the need to rent a cable box; and

        d.     An Order for such other relief as the Court deems just and proper, including, but not limited to, any and all damages, including treble damages pursuant to 15 U.S.C. § 15, together with prejudgment interest as provided by law, reasonable attorneys fees, and payment of costs and expenses incurred in filing this class action lawsuit.

## COUNT II

### (Violation of the Sherman Antitrust Act – Monopoly)

51.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

52.    Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, provides that it is unlawful to monopolize or attempt to monopolize any part of the trade or commerce among the several states.  Congress has granted a private right of action to those injured by a violation of this provision.

53.    Plaintiff, on behalf of himself and the class, seeks redress for Time Warner's violation of Section 2 of the Sherman Anti-Trust Act.

54.    Time Warner possesses substantial monopoly power in the market for premium cable services to its customers residing in the State of Kansas.  This monopoly power concerns interstate commerce because it extends across state borders, *to-wit*, the State of Missouri through services provided to Time Warner customers in the greater Kansas City metropolitan area.

55.    Time Warner has willfully acquired and maintained its monopoly power in this market through its exclusionary practices discussed above.

56.    Time Warner's actions have harmed cable consumers and competition.

57.    Time Warner's actions have created an illegal monopoly in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 1.

58.    Plaintiff, on behalf of himself and the class, requests and prays for the following relief:

a.      An Order certifying the proposed class pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiff's counsel as lead counsel for the class;

b.      An Order that Time Warner has violated Section 2 of the Sherman Anti-Trust Act; and

c.      An Order for such other relief as the Court deems just and proper, including, but not limited to, any and all damages, including treble damages pursuant to 15 U.S.C. § 15, together with prejudgment interest as provided by law, reasonable attorneys fees, and payment of costs and expenses incurred in filing this class action lawsuit.

## COUNT III

### (Violation of Kansas Consumer Protection Act)

59.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

60.     At all relevant times there was in effect the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq*. (the "Act").

61.     Time Warner constitutes a "supplier," as defined by K.S.A. § 50-624(j) of the Act, and as referenced in K.S.A. § 50-626 of the Act.

62.     Time Warner has sold and or advertised "property" in "consumer transactions" in the State of Kansas, as those terms are defined by K.S.A. § 50-624 of the Act.

63.     Plaintiff and all class members are a "consumer" as that term is defined by K.S.A. § 50-624(b).

64.    Plaintiff, class members, and Time Warner participated in a "consumer transaction" as that phrase is defined by K.S.A. § 50-624(c).

65.    Time Warner's actions as alleged herein violate the Act, particularly K.S.A. §§ 50-626 and 50-627.

66.    Section 50-626 of the Act provides, in pertinent part:

(a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction.

(b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:

      (3) the willful failure to state a material fact, of the willful concealment, suppression or omission of a material fact . . . .

67.    Section 50-627 of the Act further provides, in pertinent part:

(a) No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction.    An unconscionable act or practice violates this act whether it occurs before, during or after the transaction.

(b) The unconscionability of an act or practice is a question for the court.    In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following that:

      (1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;

      (2) when the consumer transaction was entered into, the price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers;

. . .

      (5) the transaction the supplier induced the consumer to enter into was excessively one-sided in favor of the supplier;

68.     Time Warner's actions as alleged herein violate these provisions (K.S.A. §§ 50-626 and 50-627) of the Act.

69.     As a result of Time Warner's action, Plaintiff and members of the class have been injured and damaged in an amount to be established at trial and are entitled to the remedies set forth in the Act, particularly those remedies found at K.S.A. § 50-634, including, without limitation, injunctive relief, damages, and attorneys' fees.

70.     Plaintiff, on behalf of himself and the class, requests and prays for the following relief:

a.     An Order certifying the proposed class pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiff's counsel as lead counsel for the class;

b.     An Order finding that Time Warner is liable under the Kansas Consumer Protection Act and awarding Plaintiff and the class actual damages;

c.     An Order awarding Plaintiff and the class attorneys' fees and costs in connection with maintaining this action; and

d.     Any other equitable relief this Court deems necessary or proper, including the imposition of civil penalties.

## JURY DEMAND

Plaintiff requests that a jury be convened to try the factual issues in this case.

## DETERMINATION OF PLACE OF TRIAL

Plaintiff requests that the trial of this matter be held in the United States District Court for the District of Kansas, Kansas City Division.

Respectfully submitted,

**EDGAR LAW FIRM LLC**

_____
John F. Edgar                                    #18080
John M. Edgar
Michael D. Pospisil                       #18540
1032 Pennsylvania Ave.
Kansas City, Missouri 64105
Telephone: (816) 531-0033
Facsimile: (816) 531-3322

ATTORNEYS FOR PLAINTIFF